We'll hear argument next in Case 13-7211, Jennings v. Stevens. Mr. Schaffer. Mr. Chief Justice, and may it please the Court, 90 years ago this Court held in American Railway that an appellee need not cross-appeal to raise an argument in support of a judgment that does not seek to enlarge his rights. A petitioner who prevailed on an ineffective assistance of counsel claim in the district court did not have to cross-appeal here for two reasons. First, he did not seek more relief than the new punishment hearing granted to him in the judgment. Second, he raised an argument that the district court rejected as an alternate basis to affirm the judgment. And if he did not need to cross-appeal, he did not need a COA. We may not need a COA. Sotomayor I'm sorry. I don't know if this is a new argument or a new issue. And the point is that when the judgment issued here by the district court, it specified two errors that had occurred and basically told the State court, fix those two, or you have to release the defendant. Let's assume they fixed those two, and then could you come back and say release them anyway because they didn't fix the third that I lost on? No. Not under those circumstances. So how is it not more relief? I beg your pardon? How is it not more relief or different relief? Because the single error is that he was denied the effective assistance of counsel. That is the single claim, and it was based on three allegations of deficient performance. Well, now, wait a minute. You know, I have we don't evaluate whether you had good counsel or bad counsel. You may have Clarence Darrow and still be denied effective assistance of counsel if Clarence Darrow makes one mistake. I mean, when we find that there has been ineffective assistance of counsel, I think that means counsel failed to do one thing that he should have done. But there's no such general finding that counsel was engrossed, ineffective. You're describing it as though that's what the finding is. That's not what we hold when we find ineffective assistance of counsel. We find that this particular counsel made this mistake. That's it. Well, let's take that a step further. What the court does to analyze an IAC claim is to first isolate the errors of counsel. It could be one. It could be a hundred. It doesn't matter. You accumulate them and consider them together to determine prejudice. If the deficiencies in performance constitute sufficient prejudice to undermine confidence in the verdict, then counsel was constitutionally ineffective, not because of A, B, C, or D, but because the totality of his representation did not meet the constitutional standard. So it's not a matter of fixing any particular error of counsel. And that's where I believe the State's position is a little awry, because a Federal court judgment in a habeas case is different than a direct appeal judgment. On a direct appeal judgment, the court tells the district court, we're sending the case back to you, do A, B, C, and D, or don't do X, Y, and Z. A Federal habeas judgment is a lawsuit against the warden having to do with the body of the prisoner. The Federal court doesn't have authority to tell the State to do or not do any particular thing. The effect of the Federal court judgment is to basically say, release the prisoner unless within, in our case, 120 days, you re-sentence him to life or you give him a new punishment hearing. Alitoson Would your argument be the same if all of the claims in this case were not ineffective assistance of counsel claims? Let's take an example that's in the briefs. Alitoson Sure. Alitoson Where there's an ineffective assistance of counsel claim and there's a coerced confession claim. And so the Petitioner wins on the ineffective assistance of counsel claim, loses in the district court on the coerced confession claim. The judgment is that he's entitled to re-sentencing or let's say it's re-sentencing due to the fact that the judgment is that he's entitled to the ineffective assistance of counsel, but there will not be the opportunity to introduce, to exclude the coerced confession. So would you, does your argument apply in that situation as well? Alitoson Assuming the coerced confession involves the punishment phase as opposed to the guilt. Alitoson The same phase, yes. Alitoson Okay. I think that's a situation where the State has a decent argument that because it's a different claim that would perhaps entitle you to more relief under the judgment. That is not just a new punishment hearing, but a new punishment hearing without the unconstitutional confession, that on the State of the law today, I would file a cross-appeal and move for a COA on a separate claim, because I think that would be Pfeiffer, Alexander, El Paso, Natural Gas, where you're seeking to modify the judgment and obtain more relief than it would be American Railway. Scalia Why didn't you say that? Alitoson Go ahead. Alitoson Sorry. Alitoson Yeah, just to follow up on that. If you say that, could not the same situation arise with respect to different ineffective assistance of counsel claims? Let's say that in this case, you won on your Spisak claim, things that were said during the closing. You lost on the Wiggins claim. Let's say the Wiggins claim was that there was money available from the State to hire experts, but the attorney didn't apply for the money, didn't do an investigation, that was ineffective assistance of counsel. So if you win on the Spisak claim, you'll get a new sentencing hearing, presumably free from the errors in the closing, but you won't get the opportunity to go back and do the time or the money to do the investigation. Alitoson I would respectfully disagree with that, because if you get a new sentencing hearing, you get to do whatever you want to do with the new sentencing hearing. And for our purposes, if you now know in Federal court that the lawyer didn't investigate mental history and discover X, Y, and Z, you now know it. Alitoson On remand, they say, well, you lost that claim. You lost it, so there's no need for more money, there's no need for more time. Let's do it over with, you know, with a proper closing. Alitoson And that's the thing. The Federal habeas judgment cannot direct the State court what to do or not do at a time unless the constitutional error is fixed. Scalia Well, that's not true. It can tell them what to do. The basis on which the conviction was set aside cannot be repeated by the State court. You're saying that the State court is free to make the same mistake again? Alitoson Well, it's actually not me saying it. It's this Court's opinions have said that a Federal habeas judgment does not decide what a State court may do or not do on remand. We just direct them to fix the constitutional error. We don't tell them how to do it. Scalia Well, once you say we direct them to fix the constitutional error, that is something they have to do on remand, isn't it? Alitoson Or the Federal court will release the present. Scalia Oh, fix that constitutional error. Alitoson Correct. Scalia But this other constitutional error, which we didn't rule on in the habeas thing, they don't have to fix. It's up to them. Alitoson But let's remember, in an IAC claim, it's different than a freestanding admission or exclusion of evidence claim, because a Federal court habeas judgment cannot, for example, in this case the State says we sought to enlarge our rights under the judgment by asking the Federal court to order the State to fix any closing argument error and require a new trial free of this error. We didn't ask that. We could not have asked that. A Federal court cannot order a State court to fix any error of defense counsel or tell defense counsel how to try the case, what to offer, what not to offer, what  So what a Federal court can do is provide a remedy for the Petitioner if he does not have effective counsel at the retrial. Roberts And that remedy is a new trial. What if one claim is the ineffective assistance and the other claim is a violation of the Confrontation Clause? And when you go back, they can repeat the error or they can choose not to call their witness, either way. And it would seem to me that if you didn't file a cross-appeal, that the Federal court decision would be an advisory opinion on the Confrontation Clause. And so in that circumstance, if you were seeking additional relief, i.e., keep out the non-constitutional admission of evidence, then in that situation I would file a cross-appeal and move for a COA because I would be seeking to enlarge my rights under the judgment. The judgment that we got here didn't really give us anything more than the Constitution gives any citizen the day he walks into a courtroom, which is the right to a trial with the effective assistance of counsel. Scalia No, no, no, no. The right to a trial that did not have this failure of counsel, this particular failure. You're not entitled to competent counsel. You're entitled to counsel who doesn't make a mistake. He could be the dumbest counsel around, so long as he doesn't make a mistake. And he could be the smartest around. And if he does make a mistake, that's ineffective assistance of counsel. Respectfully, it's not, by itself. The mistakes may be mistakes, but unless the totality of those mistakes constitutes sufficient prejudice to undermine confidence in the verdict. Breyer. Was that an issue here? I mean, looking at the blue brief and the red brief, it seemed to me that the issues here have turned on the mistake. How many mistakes are there? It wasn't a question of prejudice. That is, the lower court said even if you were right, and they thought you were right, that these two errors in failing to investigate the background created prejudice. So I don't think there was an argument on appeal about whether there was enough prejudice. It was a question of was this a mistake. Am I right or not? Well, my position on appeal was, I'm just saying was there an argument about that? Did they disagree about that? I think the State certainly disagreed with the court. And they argued that before the court. They said even if there – they said the issue before the Fifth Circuit is whether altogether these three things amount to prejudice, because our view of the State's view was, all right, even if there were errors here, it didn't amount to prejudice. What they basically said is that the district court didn't defer to the State court findings and conclusions regarding those matters. So – but let's play the State's argument out to its logical conclusion. Under their theory, let's assume the same thing happened to the district court. We win on A and B, we lose on C, and they say, we're not going to appeal. Go back to State court. We'll give you a trial. You can introduce the evidence of alleged mental deficits and disadvantaged background. We'll give you a chance to save your guy's life by laying it off to a jury and letting them decide. And I say, nope, I'm going to appeal the closing argument to the circuit. And so I file a notice of appeal and move for a COA. And the district court – let's see how that would play out. The district judge would say, did you read my opinion? You won. Why do you need a COA? Why do you want to take this up? And I would say, Judge, because I need an order for you to tell me that I cannot argue to a jury that I would agree with the death sentence. I need that order to keep me from doing that. And the judge would say, you're out of your mind. COA denied. I'd appeal to the circuit. The State would take the exact opposite position they're taking here. They would say, this is a frivolous appeal. He got all the relief he wanted in the judgment, which is a new punishment hearing. He doesn't have the right to appeal this. This is an example of death row inmates abusing the system and filing frivolous appeals to delay things. Well, the predicate of the argument is that, again, that ineffective assistance of counsel claims are different. You wouldn't think that it was crazy in the situation where you've got the ineffective assistance counsel claim and the coerced confession claim. You went on the ineffective assistance of counsel claim. They don't reach the coerced confession claim or the confrontation clause claim. It wouldn't be crazy for you to appeal the loss on either of those things, because if you don't get relief on that, then you're going to have the same thing when you go back, right? And that's right. And in that situation, I would be seeking to enlarge my rights under the judgment by having evidence excluded at a retrial. That's beyond the scope of the judgment. In this case, the judgment gave me everything I wanted. There's not a word in that judgment that's adverse to me. There's not a thing I could have asked for. But the argument is that what the judgment was is the relief that you got is a new sentencing hearing shorn of the particular errors the district court found. And those particular errors did not relate to this BSEC or the closing argument. So you're trying to say, we had a judgment, we won, and ordinarily, a judgment winner can't appeal because they won. And if there's an argument that was made on which the judgment winner lost, that's not preclusive because they didn't have a chance to appeal. A judgment winner can't appeal. But this is peculiar because the order is you're entitled to a new trial shorn of these particular errors. Court of Appeals says they're not errors. And then you want to bring up another error. Well, I want to be – let's break down the way IAC is analyzed. The issue in this case was, was Petitioner denied the effective assistance of counsel at the punishment phase? In the vernacular, we made an IAC claim. We made – an IAC claim, this Court said in Strickland, has two components, deficient performance and prejudice. We made three arguments in support of deficient performance. We won two, we lost one. We won the claim. We got the new punishment hearing. So at the new punishment hearing, let's assume we got one. And I was – it doesn't mean I would have to put on the evidence of mental health history and disadvantaged background. I can make a strategic decision based on the landscape of the retrial, what to use or not use. So the Federal court order would give the Petitioner a new punishment hearing, but it would not dictate to me what evidence I had to put on, what arguments I had to make, nor could the State or the trial court compel me to do or not do anything. It could only provide a remedy if I didn't do it correctly. Scalia, if you fail to put on the same evidence which the Court of Appeals had said the failure to produce constituted ineffective performance of counsel, if you do the same thing again, why wouldn't that be ineffective assistance of counsel? Well, it might or might not, depending on the way the case was retried. What if, for example, on the mental – let's just take an example. The mental health history. Okay? The State went out and got a doctor to controvert the opinions of our doctors. What if I decided at the retrial, you know, I think that getting into this mental health history would create more harm than good based on what the State's doctor is going to say? I'm not going to put that on. I'm just going to go with the disadvantaged background and argue that they haven't proven future dangerousness because he's got no history of violence when he's incarcerated. I could make that strategic decision. If somebody wanted to come along later and grade my papers, they could and they could say thumbs up or thumbs down, as the case may be. Let's examine the State's argument. Breyer, you couldn't put – if all things otherwise were the same, you couldn't do what the lawyer did here without being ineffective assistance. That's what – isn't that their holding, the holding of the district court? The district court says the lawyer in these circumstances did not give effective assistance as to two things. So, of course, things could change in the new trial and then you could act differently. But if they didn't change, you would have to act what the district court said, wouldn't you? I would agree with regard to the evidence of disadvantaged background, because that's written in stone. That doesn't change. All right. Now, once that's so, there is nothing in the order that would, things being identical, stop the prosecutor from making precisely the same remarks that you're challenging. But, see, it wasn't the prosecutor that made the argument. It was the defense lawyer. All right, fine. Whatever the third error is, there is nothing in the order that would prevent the lawyer from doing precisely the same thing. There is something in the order that would prevent you from doing the same first two things, other things being precisely equal. Well, if I may, let me – let's look at the mental health history for a moment. The mental health history was not even known by the trial lawyer, okay? So if he was ineffective, he was ineffective based on a Wiggins failure to investigate type of situation. That's a different question. Let's assume he had investigated and he found the same things that I found during habeas, and he decided not to put it on. Then it would be a strategic decision which he would have to defend, and so that's where we come back, because that evidence was never used. But why are we talking about the claim on which you lost on appeal? You're not going to get a chance to go back with disadvantaged, with mental health, because you lost on those on appeal. I thought the Wiggins claims were rejected on appeal. They were, but let's play this. Let's assume that we get merits review on the closing argument. And remember, it's not a claim in my view. It's an argument in support of a claim. And I think the key portion of the government's claim is that it's not a claim. Ginsburg's argument is that the Wiggins claim rides on our treating ineffective assistance of counsel as one claim rather than ineffective assistance of counsel, confrontation clause, some other violation. If we don't buy your argument that ineffective assistance of counsel is one monolithic claim, and we think the division between what they're calling the Wiggins error and the Spies, that those are two different claims, you would lose if there's a difference. I disagree. I don't think you even need to reach the issue of is IAC one claim or not. It's here because they've split my claim into thirds by saying I made three claims instead of one. I can still win under a pure interpretation of American Railway because I am not seeking greater relief than what I got in the judgment, which is a new punishment hearing. Kennedy, would you agree that to include all of the counsel's errors is important to show the substantiality of the error? And that's what I did in the Fifth Circuit, was say, look. Would you agree that goes to show how substantial the incompetence was? The combined effect relates to the prejudice inquiry, but, of course, one alone can be sufficiently prejudicial. With that in mind, I want to turn to the COA statute. Sure. Let's assume that we accept your argument that you did not have to file a separate notice of appeal. Okay. Does that mean that you automatically comply with the COA? Because the COA statute says that a certificate of appealability must show that the applicant has made a substantial showing. And you've conceded that all aspects of the incompetence of counsel go to substantiality. So why is it that you have complied with the COA statute? Well, I haven't complied with it. And the underlying question is, once you — if you were to convince us that no notice of appeal was required, does it automatically follow that you're not required to have a COA? I think that's the key issue. The rule I propose that I think is based on the statute and the text of the rules is if you need to cross-appeal, you need a COA. If you do not need to cross-appeal, you don't need a COA. And let me give you two — let me hit the government's arguments head on, and I think this is key. They say the COA requirement should be read into the statute or adopted as a matter of Federal common law. That is a tacit acknowledgment that the statute does not require a COA for the nonappealing Petitioner-Appellee. In their brief, they do not rely on the text of 2253C or the associated rules, FRAP 22B or Habeas Rule 11a. They want you all to — the Court to read that into the statute, and that is not appropriate where the text is clear or comprehensive. Ginsburg, you are saying that the COA statute itself says you need a COA to appeal from the final order, and you don't want to appeal from the final order because you like the final order. Well, in part, correct. 2253C says a COA is required for an appeal to be taken to the court of appeals. Now, we know that doesn't apply to the government for two reasons. First, under C-2, a governmental entity could never show the denial of a Federal constitutional right. Secondly, under FRAP 22B-3, the government is expressly excluded. So if it doesn't apply to the government, who does it apply to? Who did Congress intend for 2253C to apply to? The answer is clear. Petitioner-Appellants who take the appeal or Petitioner-Appellees who take a cross-appeal. So why wouldn't you have to take a cross-appeal? Because, well, that gets us back to where we were. It's the same problem, isn't it? I mean, do you help yourself by saying, okay, we need a cross-appeal that only applies there? Because then we get into exactly the same argument whether you need a cross-appeal. Well, but I say I don't need a cross-appeal because I'm not seeking to enlarge my rights in the judgment. They say, well, yes, you are, because you're back in the same argument. What? IAC is a single point? Let's assume that we disagree with you, that you needed a cross-appeal. Could you answer or didn't or agree with you, you didn't need a cross-appeal? Okay. Answer Justice Kennedy's question of why you don't need the COA. Sure. Because a cross-appeal doesn't have to make a substantial showing of a denial of a constitutional right. A cross-appeal is just a piece of paper you file. It doesn't have to show anything. It just says I want to appeal. Exactly. So why are the two tied together in your mind? Well, because I think when you read 2253C, it's clear it applies only to the part of the Petitioner-Appellant who lost, obviously, on everything below, or the Petitioner-Appelee who lost on a separate claim that he's now desiring to appeal. And this is kind of, I think, obvious to me if you look at Habeas Rule 11a, which says that the district court must issue or deny a COA when it enters a final order adverse to the applicant, the applicants the party taking the appeal. Here, the district court did not enter a final order adverse to me, and I didn't take the appeal. So you don't reach that part of 11a that says if a COA is required, it has to specify the issue or issues that satisfy the showing of the denial of a Federal constitutional right. Do you agree that a Petitioner who has to take a cross-appeal, because the Petitioner wants to enlarge the judgment, does not have to get a certificate of appealability? Do I agree that he does or does not? Does not. No. He has to. I think if you take a cross-appeal, you need a COA. And here's the other thing, and I do want to hit this. The State says the COA should be required as a matter of policy to screen frivolous appeals, and indeed, that's the most attractive argument they make, because what court doesn't want to screen frivolous appeals? I want you to bear in mind, please, that there's only a few cases each year in which the Petitioner prevails in the district court under the daunting AEDPA standard of review and the State appeals. The information we received off of the public databases that we were able to check and so I put an asterisk next to this, is that in 2013, there were 18 cases in the Federal circuits that have our scenario where the Petitioner won and the State took the appeal. So that's less than two per circuit. That's a speck of sand on the beach of cases. Where a Petitioner prevails in the district court under the AEDPA standard of review, that appeal is not a frivolous appeal. The appellate court's going to have to spend its time on it. It's serious, especially in a death penalty case. And the briefing rules, page limits, the fact that the Petitioner would have an incentive to protect his judgment and focus his efforts on the claim he won would certainly discourage people from doing what the government says, which is to raise a hundred frivolous arguments in response. If that were to happen in this speck of sand number of cases in the appellate courts, I'm totally confident that the circuit courts can dispose of frivolous arguments in a sentence, a footnote, or a paragraph like that. Before I reserve the rest of my time for rebuttal, I want you to — I don't know whether this Court appreciates irony, but I suspect that you do, and I consider it ironic that the State is basically trying to scare this Court into reading a COA requirement into the statute for a Petitioner appellee under the guise of the appellate courts being inundated with a hundred frivolous arguments by prevailing Petitioners in a case where the prevailing Petitioner raised exactly one argument, and it comprised three pages out of a 53-page brief in which the first 50 pages sought to protect the judgment. A final thought. If this Court were to rule in our favor, I don't see there being any seismic shift in the Federal habeas landscape. This case, in the great scheme of things, is a blip on the Federal habeas radar. But if you accept the State's position and rule in their favor, in my judgment, the Court would have to find that ineffective assistance of counsel constitutes separate claims based on the number of allegations of deficient performance, and that cannot be harmonized with Strickland. Under the State's theory, there would be no circumstances, there would be no case in which the Petitioner appellee did not need to cross-appeal and obtain a COA. Viewing this in context and boiling it down to the bottom line, I filed one IAC claim. I had one child, and I named him Strickland. The State cannot come back now and tell you that I had triplets, and their names are Wiggins I, Wiggins II, and Spisak. In other contexts, however, that IAC is not a unitary concept, is it? I don't want to take up your rebuttal time, but in other contexts, like repetitive litigation or exhaustion, IAC is not a unitary concept. Talk about it on the rebuttal if you want. Well, I don't want to get too far into that, but it's a totally different situation there, because those cases, Trevino and so forth, they're based on principles of Federalism and comity. It's not a lack of jurisdiction. It's that the Court can decide to excuse some procedural default based on cause and prejudice. In our case, it's a pure question of appellate court jurisdiction. Does the court of appeals have jurisdiction to rule on an argument in support of ineffective assistance, where I've already won on the claim? All I'm asking them to do is consider the argument as an alternate basis to affirm the judgment of the district court. And for that reason, this Court should reverse the judgment of the Fifth Circuit and remand for consideration of the closing argument on the merits. Thank you. Thank you, Counsel. I'll reserve the rest of my time for rebuttal. Mr. Oldham. Mr. Chief Justice, and may it please the Court. It's now common ground that Petitioner would need to cross-appeal to add some conditions to a conditional release order issued by the district court. The only question in this case now is whether the particular condition requested by this particular Petitioner was necessary or sufficient to add to the conditional release order. And we think that it was. We think that this particular condition, the Spisak error, was a meaningful condition and it necessitated a cross-appeal for two reasons. First, if Petitioner had cross-appealed and prevailed on the Spisak claim, the State would have been obligated to fix that error, to cure that error, upon pain of immediate release of the prisoner. And that is a dramatically form of relief that would necessitate a cross-appeal. How would you do that? How would you cure the Spisak error? Well, there are many ways that the State and the defense and the prosecution and the defense and the State court could cure the Spisak error. It starts with the enunciation of the standard from the Federal district court as to exactly what the Sixth Amendment requires of a closing argument, which then guides both the prosecution and the defense. But the Spisak error is something that the lawyer said in closing argument. You're going to have a new trial, right? Well, presumably, I mean, the lawyer may say the same thing or the new lawyer may say the exact same thing or he may not. It seems to me that it's a fairly academic dispute as to whether or not you have a separate claim once you have the relief of a new trial. Well, we don't think it's an academic claim with respect to adding the condition that requires a certain level of constitutional performance for the defense counsel. You always have the same level of constitutional performance. This is only going to come up as a particular problem if for some reason the lawyer says exactly the same thing in closing as the prior lawyer did, and I don't anticipate that happening. Well, this actually happens in ineffective assistance at counsel claims in other contexts where the State court has the power, for example, to conduct a colloquy with the defense lawyer to probe what the judgment is that has informed the defense lawyer's representation, what the defense lawyer has done, what the defense lawyer plans to do, and, of course, the State has the ability to object and move for curative instructions if the error recurs. But the fundamental, the really important point is that if the error recurs or if the State fails to fix it, the remedy is immediate release, which we should all agree is a dramatically expanded form of relief, which would necessitate a cross-appeal. Scalia. Mr. Oldham, I'm — some of my questions to your opposing counsel suggest that ineffective assistance at counsel is mistake by mistake, that there are here three claims of ineffective assistance, not just one. Maybe that's so. What do you do with this case where the trial court finds two instances of ineffective assistance, the State agrees that those two are valid, but appeals on the ground that it was harmless error, that the cumulative effect of those two mistakes was not enough to change the outcome of the trial? The defendant, on the other hand, wants to raise the issue that there was indeed a third instance of ineffective assistance, and that if you combined all three, there would have been sufficient harm to enable setting aside the verdict. What do you do with that case? There are the three separate instances that have sort of been combined into one where the issue is the harmful effect. The answer, Justice Scalia, would turn on the particularities of the third error of the hypothetical. That is, if the third error was sufficient to push it across the line of the Sixth Amendment and the deficient performance standard, then that would be the contours of the ineffective assistance of counsel claim. Scalia, so you would allow that one to be raised without a cross-appeal? So long as it would, or at least so long as it's argued, that that would produce the incremental effect of reversing the judgment? Yes. We agree with the Clarence Darrow hypothetical from the top half of the argument, which is that you measure the constitutional error based on where the lawyer's performance transgresses the bounds of the Sixth Amendment. And so if in the hypothetical, if that happened to have been on the third error, then that would be the contours of the ineffectiveness claim. To return to the Chief Justice's point. Breyer, before you leave that, I thought that your opposing counsel said that did happen here. It was that you did raise the question of whether there was enough prejudice, and therefore, they were entitled to bring in the third as showing that even if the first two weren't sufficient, the third made up for it. Justice Breyer, we disagree with that characterization of what happened in the court below. What happened in the court below and in the district court was that Petitioner raised three allegations of deficiency. This is how he characterized it in his own certiorari petition to this Court. Three allegations of deficiency, each of which, standing alone, both transgressed the bounds of the Sixth Amendment and was a prejudicial error. We fought back on two because the district court had granted two, and those were reversed in the Fifth Circuit. He raised a third independent error. And if he wants to add that third independent error to the conditional release order, that is, he wants the State to be held responsible and a constitutional error imputed to the State sufficient to command his immediate release upon failing to fix it at a second trial. Scalia, first two were thrown out on the grounds that there was no error, right? That's correct. Not on the ground that the effect was not harmful enough to warrant setting aside the judgment. That's correct. They were under that. That's correct. And although the State did brief it on the close date. Sotomayor, what do you do with the COA? I mean, however we rule, we may be creating headaches, okay? So Petitioner wins on two, and he loses on the third issue, the closing summation. Does he have to then go for the COA? He can't wait for you to appeal and then make that decision, can he? Well, under our view and under the hypothetical given on the top side of the argument, he could cross-appeal. And that actually and, of course, would have to get a COA. Cross-appeal when there's no appeal? He could have taken the first appeal. He could not have taken an appeal. Only the State could take an appeal, right? Our view is that on this particular judgment, he could have taken the first appeal. And that's incredibly important, because it would give him an additional protection if there was a second trial. In particular, he could get a Federal court to say the Sixth Amendment demands this level of compensation. Where does the statute or the rule talk about somebody who loses on a particular claim, but wins the judgment? I thought, I'm looking at the order. The order is on page 33 of the appendix, and it doesn't say anything about Spiess or about Stack or about, what was the other, Wiggins. It just says the order is three choices, release him from custody, or give him a new sentencing hearing, or sentence him to a term in prison. That's it. That's the order that we're reviewing. That's correct, Justice Ginsburg, but it must be read in the context of the entire opinion. As we pointed out in footnote 6 of the red brief, this Court and other Federal courts often write their conditional release orders differently, to say, for example, as Judge Pollack did in the Lamb case, these particular errors have to be fixed. And everyone seems to agree that if the judgment said these particular errors have to be fixed, he could have taken the first appeal or he could take a cross appeal. Breyer. If he could take this first appeal, how does it work? That is, it seems to me that I've seen lots of petitions and habeas where an incarcerated person will bring up 40 arguments. Now, suppose that he loses on 39 and he wins on 1 and he gets his new trial. And the court, the prosecution says, fine, we'll go ahead, we'll give you the new trial. Is the lawyer then supposed to appeal his 39 losses? Well, as a practical matter, the notice of appeal deadline would be far in advance of the retrial decision. No, no. He wants to you said he could take the first appeal. So before the new trial goes on, he says, I think I'll take the first appeal on the other 39 that I lost on. Can he do that?  And for a brief period of time, he can. Well, then a lot of people, you know, I'm not saying they're badly motivated, they're in prison, they might think this is sort of interesting, I might lose that trial, let's just see if I can't find a few other grounds here. Well, it's obviously not a lot of people. Now, I haven't ever heard of that. Have you found examples where that's happened? Well, as the Petitioner points out, there's only 18 of these cases in the court of appeals from last year. But a great example of that is in the District Court. Well, wait. Have you found many, one cases where a Petitioner won in the District Court, there is no State appeal, but he did lose on other grounds, and he decided to take a first appeal on several of those other grounds? I'm unaware of any, but only because the State often appeals. And any decision by the Federal law constitution would be a purely advisory opinion. Roberts, let's say he loses on a Confrontation Clause claim, he wins on the Adequate Assistance of Counsel, he takes the appeal. If I'm the judge on appeal, I say, well, in the new trial, they may not call the witness that you said shouldn't have been called, and you want me to issue an advisory opinion just in case they do. I don't see how he can do that. Well, it wouldn't be an advisory opinion in this sense. It would say that what happened in the previous trial transgressed the Confrontation Clause or the Sixth Amendment, depending on which case, which claim had lost below, and it would give him a very valuable procedural protection in the second trial. No. It's superfluous in the sense that it is unnecessary to the judgment. He got the judgment he wanted. The trial was set aside. The conviction was set aside. He got a new trial. And he's saying, oh, there are additional reasons why I should have gotten a new trial. I'm not going to listen to that. That's absurd. You got what you wanted. Now go away. Justice Scalia, our view of the conditional release order is significantly weightier than that. What we think a conditional release order is, and what we think that this Court's habeas case is demand, is that a conditional release order is a Federal court's order on a constitutional claim that says the State must release, that is, the actual quintessential habeas remedy, or fix these errors. Never does the conditional release order say you get a new trial. Sotomayor, you may be – well, this one did, said release, give him a new hearing or release him. But I'm taking – I do want you to answer my COA question, okay, because what you're saying is exactly what Justice Scalia is worried about, which is, is he going to go and present a COA, and are we going to even entertain it since he won his release? But if – does he have to get a COA? But more importantly, what happens when there's a new hearing? Those two mistakes are not repeated, but a new one is introduced, and the old one is repeated. Are you saying he can't appeal again? No. On the old one or the new one? Our rule is actually much more – much more protective of the prisoner than that, because if the old error is recommitted, he gets immediate release. And that's the – No. That's – you're saying he only gets immediate release if it's the old error the judge found on the first habeas. That's right. But let's assume that the second error is – the third error is committed, and even a new one is committed. That wasn't a part of the first function. Can he appeal? Of course. Of course. And he has a new – yes, he has a new judgment. He can challenge the new judgment. The only question is how much relief affords to him, because he agrees with us. To go back to Justice Scalia's example, he agrees with us that he can't err. Can we go back to basics? Isn't it true that a judgment winner does not have to appeal an issue on which he lost? But he is – if he's content with the judgment, he can present arguments that would entitle him to the relief. He can assert defensively. A judgment winner doesn't have to appeal and doesn't have to cause appeal. That is the general rule, right? Yes, we agree. The only question is whether he's a judgment winner, and we've pointed out many examples where people can be prevailing parties in the sense that the judgment imposes no liability on them, but they can nonetheless appeal. And we would submit that this is one of them. And it's precisely because he wants the additional protection. To go back to Justice Scalia's example, everyone agrees that if the Petitioner wins on one claim, but he wants to raise a coerced confession claim, he can file a coerced appeal or a cross-appeal. Sotomayor, suppose it were he just had two Wiggins claims. One was the lawyer didn't find the psychological report, and the other was the lawyer failed to put on my mother as a character witness. He loses one, he wins the other. Does he have to take a cross-appeal on that? He has to take a cross-appeal if he wants the one he lost on added to the conditional release order. That is, he wants the protection that the Federal court would provide against that error being either recommitted or failing to the State failing to fix it. Roberts. Roberts. But they keep talking about the conditional release order. It doesn't say anything about what the State must do, what errors it must correct. It's on page 35. It just says give him a new sentencing hearing or sentence him to a term of imprisonment. It doesn't say because of this, because of that, because of this. And that's absolutely correct. But we — it seems like both sides agree that it could have said exactly what the opinion says. That is, I found two errors here, I've not found an error on the third ground, and therefore it could have been incorporated in the text, as they often do. As I say, footnote 6 of the red brief collects a series of the ways that Federal courts phrase them, and it would be a bizarre cross-appeal that would turn on the particular phraseology of the conditional release order when everyone agrees that the meaning of it is the same. And if it — Let's just take a case, there's no cross-appeal or anything. The prisoner alleges inadequate assistance of counsel, and he loses. He files a COA. He says my counsel was inadequate because there were two Wiggins errors he did not — two Wiggins errors. That's what he says in the COA. The COA is granted. Now he files his brief. Can he allege a speedback error as well? As far as I know, no court in the United States, no circuit court in the United States would allow him to do that because of 2253c3. So can he — so in other words, in a COA, you have to list every error that counsel made on pain of not being able to argue that in your brief? Yes, Your Honor. That's what 2253c3 says, issue-by-issue specification. And every court of appeals in the United States agrees, even the Seventh Circuit, they would seem to — would say all three of the errors that you hypothesized would be the same. Even in the Seventh Circuit, you would have to get a certificate of appealability in that circumstance. But that's the — c3 comes after c1, and c1 says you need a COA to appeal from the final order. And so if you don't need a COA to appeal from the final order, you don't want to appeal from the final order, the final order is fine, you would never get to c3. c3 says if you need a COA, then you will indicate which specific issues. But it doesn't — c3 doesn't tell you when you need a COA. c1a tells you that. That's correct, Justice Ginsburg. And c1, as is currently written, predated even AEDPA. And even before AEDPA, that is, in 1986, the Second Circuit interpreted c1, as it is currently written, to require prisoners when they are the appellees to nonetheless get COAs. And as we see it here today, six out of the eight— Ginsburg. Where does that come from, the statute? I mean, the statute says you need a COA to appeal from the final order in a habeas proceeding. Well, from the final order. I don't want to appeal from the final order. It's good. So the pre-AEDPA standard was the Certificate of Probable Cause standard, which courts of appeals, starting with the Roman decision in 1986, required prisoners to satisfy the issue, the CPC requirement, even as the appellee. And as we sit here today, six out of the eight courts of appeals would require the Petitioner in this case to get a Certificate of Appeal ability. I suppose it wasn't a— To appeal from the final order. Justice Ginsburg, as this Court has said twice, in both in Miller, Ellen, and Slack, the language of this statute, 2253c, imposes a list of necessary but not sufficient conditions. And it is entirely within the provenance of the courts of appeals to deal with these issues on a regular basis to interpret that language to also apply to a prisoner who is the appellee, who wants to raise an issue for the court of appeals consideration, both because that's the purpose of the statute and because it was the pre-AEDPA standard upon which the statute was enacted. And so if I might just return to the Chief Justice's hypothetical about the potential for something not happening again. This is much more significant than simply that. If you think about the quintessential error that could never recur, it would be, for example, a Brady violation. That is, the withholding of exculpatory evidence. Once it's in the possession of the defendant, how could it ever recur? But it's in precisely that circumstance that one of the most powerful exhibitions of a conditional release order has worked out, because in the Wolf v. Clark case, at the Fourth Circuit, the Commonwealth of Virginia received a Brady remedy, that is, it had its conviction vacated because the particular evidence had not been turned over to the defense. Now, that error, that particular error could never be recommitted, but the Commonwealth violated the spirit and the intention of that conditional release order by interviewing the jailhouse informant that gave the evidence, threatening him with perjury, and convincing him not to testify at the second trial. And in that circumstance, because the conditional release order, which was phrased materially identically to ours, by the way, the phraseology did not mention Brady, but because he had the power of the Federal conditional release order, instead of having to sit through another trial, instead of having to have the Brady evidence excluded, he was able to go back to the Federal district court that issued the original conditional release order. Breyer, I mean, there may be situations in which the State or the ineffective counsel, they do repeat the error, or they may not. Well, this one couldn't have been repeated. It was by definition not repeatable, but it was because the State failed to fix it. See, it's actually a significantly greater obligation on the State than not to simply not doing the same thing over again, right? I'm thinking here to the Criminal Justice Foundation file to brief, and as I read it, I thought, well, the point of this is don't make it too complicated. So they said, well, let's just consider what Estelle says, you can't be deprived of a – you have to make a substantial showing of the denial of a Federal right. So they're saying the Federal right here that we're deprived of is a Sixth Amendment right to counsel, period. There are a lot of different bases for it. There are a lot of different things that happen, but that's the single ground or right or, in this case, issue doesn't change the word that it used to mean. So call it this one thing, it's so simple, and at that point, let the court of appeals deal with it. As soon as we try to separate different bases for saying that this was a deprivation of the right to counsel, we are going to produce a pretty good nightmare, because they shade into each other often. They're related in a variety of ways. They may be or may not be related through the prejudice problem, and lawyers will start wondering when they have to file a cross-appeal, and we will create a mess. So that's the basic argument, I think, of this brief, and it is one of the arguments that they're trying to make. Now, what is your simple, clear answer to that? The current rule in six out of the eight courts of appeals is not a nightmare. And the current rule reads issue in 2253c3 to mean issue, not to mean a single claim. And so the nightmare that's predicted or the pragmatic solution is in want of a problem in the sense that this is the rule that we have advanced on the Certificate of Appealability is the majority rule. Sotomayor, isn't that a rule that was set up, as Justice Ginsburg said, only when the Petitioner has it won? But here there's a judgment for a re-sentence, and as the Chief Justice indicates, the error may or may not, the third error, may or may not be repeated. So go back to that point, which is if you're a successful litigant, do you even have a right to try to go get a COA? So the rule that I'm providing, six out of eight, is in the circumstance where the prisoner won and wants to nonetheless raise additional issues. So it's exactly this case. And the simple fact of recurrence is both a difficult rule to predict, ex ante, as the Wolf case would illustrate, but it also would give short shrift to ineffective assistance at counsel. Ginsburg. Why doesn't it just fit, why doesn't this case just fit what is the standard rule that a party who's content with the judgment doesn't have to cross appeal to preserve arguments that enable him to retain the benefits of the judgment? That's the standard rule. Justice Ginsburg, it fits within that rule. It just begs the question of what the judgment is. And in our view, the judgment entitles him to either release or to a re-sentencing under particular terms. And if he wants to change the terms of the re-sentencing, he's attacking the judgment and expanding his relief. We all agree that he would be attacking the judgment and expanding his relief if he wanted to add coerced confession. Our view is that ineffective assistance at counsel is not a second-class right. It is not one that can be subordinated to a coerced confession claim, and that for the exact same reasons that the coerced confession claim may come up, may not come up, may be difficult to understand ex ante, the practical significance of it may be difficult to discern ex ante, he still has to cross appeal in both circumstances. He has conceded in the top. But if I understand the implications, this goes back to, I guess, the hypothetical I asked before. Now I have five Wiggins claims. You didn't put on my mother, you didn't put on my brother, you didn't put on my sister, you didn't put on my uncle, you didn't put on my aunt. And the Court says, you know, we think your brother and your mother really did have something to say. We're not so sure about the others. Did you think I have to cross appeal on my aunt and my sister and my uncle? And not only did you think I have to cross appeal, but you think that if I had won and the State had not taken an appeal, I would have had to appeal myself. Well, two things, Justice Kagan. One is that on that particular hypothetical, I would suggest that there's just one Wiggins claim, and that is failure to call family to testify. And so there is a sort of a tension in how we conceive of the claim in this case. And it's — Well, you know, I could do another hypothetical. Sure. Failure to call family, failure to call the psychiatrist, failure to find the psychiatric report, failure to go investigate my mental background. Absolutely. And our position is, yes. It's not that you have to cross appeal. It's that you can cross appeal, right, in the sense that you could, if you wanted to go back and have a second trial without having the ones that you lost protected by the Federal Constitution, then you can. But if you want to have a conditional release order that commands the State to fix those particular errors upon pain of immediately releasing you, our rule allows you to cross appeal, whereas their rule does not. So do you need a toll or two? Yes. Yes, Your Honor. You would always need a certificate of appeal. How do you do that? If — take Justice Kagan's example. You've won, and you want to — you're willing to forego unless there's an appeal by you. Now I'm going to cross appeal. Now I need a toll or two before I know what you're doing? Well, the prisoner — it's common ground that if the prisoner appeals on the top or the bottom, the prisoner needs a certificate of appealability. And our position is that the particular rules that we're offering here offer protection to prisoners in the sense that — and it offers protection to the State as well, right? It lets everyone know before we have to go back and have another trial about the mother or the sister or the cousin, the psychiatric report, what the rules of the Sixth Amendment game are. It allows a prisoner to know that if the State doesn't fix that error, he gets to go free, and it allows the State to make a decision as to perhaps not even conducting a trial again. We've offered this example in the briefs, and it's been unrebutted in the reply, that depending on what the particular conditions are, the State may forego and commute to a term of years, which is the ultimate benefit to the prisoner. And so it's incredibly important to give a prisoner the right to cross-appeal in that circumstance, and if he wants the court of appeals to address that issue, he has to cross-appeal, because it would be expanding that relief by adding a condition on a conditional release order that the State must obey or fix or otherwise let him go immediately. If there are no further questions. Roberts. Thank you, counsel. Mr. Schaffer, two minutes left. I'm a — as you all — as the Court can probably tell, I'm a fairly simple-minded person. And when I looked at this and said, is there anything I need to do to get this closing argument in front of the circuit in response to the State's appeal, I said, well, no. I won on ineffective assistance of counsel. I'm just making another argument in support of the judgment as to why there was prejudice. End of story. That's the extent of my thought. The bulk of these Federal habeas cases, as I'm sure the Court knows, 90 percent or more are pro se State court prisoners trying to navigate the treacherous Edpa waters without any help at all. And it's tough enough to win on the merits to create the procedural nightmare of even getting into the ballpark that the State would have you create. It's like throwing out the baby with the bathwater. The simple thing is, we want to make it easy for courts to acquire prisoners to get into the ballpark. Sotomayor, the only way you can win this, according to you, is if we rule IAC claims are one claim? No. I can also win, Justice Sotomayor, on the basis that even if IAC is multiple claims, I did not seek to enlarge my rights under the judgment. And it goes back to the State's position that you have to cross-appeal. If I want to enlarge my rights, for example, if I win on punishment phase IAC and I lose on guilt phase whatever, and I want more than a new punishment hearing, I would have to cross-appeal, obviously, in that situation. Well, you answered no, but then your explanation produces yes. You're saying you don't have to cross-appeal because you won on an ineffective assistance of counsel claim. Right? There's one, you know, omnibus ineffective assistance of counsel claim. You won on that, right? So your answer to Justice Sotomayor should have been the opposite of what it was. If you said yes, you should have said no. If you said no, you should have said no. Oh, I do that all the time. But my understanding was she was asking me when would you need to cross-appeal, and I was saying the scenario in which you would. This is not one of them. Thank you. Thank you, counsel. The case is submitted.